# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| DONNA M. DAVAULT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1: 20 CV 247 DDN |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Donna M. Davault for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1601, *et seq*. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff Donna M. Davault was born on September 23, 1959. She filed her application for SSI on September 21, 2018, with an alleged onset date of September 6, 2018. (Tr. 135.) She alleged disability due to chronic obstructive pulmonary disease ("COPD"), depression, anxiety, elevated blood glucose, and high cholesterol. (Tr. 156.) Plaintiff's initial application was denied on November 7, 2018. (Tr. 67.) On December

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kilolo Kijakazi is substituted for Andrew Saul as defendant in this action. No further action is needed for this action to continue. See 42 U.S.C. § 405(g) (last sentence).

14, 2018, plaintiff appealed the decision and requested a hearing by an administrative law judge (ALJ). (Tr. 72.)

On January 9, 2020, plaintiff appeared at a hearing before an ALJ. A vocational expert (VE) also testified at the hearing. (Tr. 33.) On March 19, 2020, the ALJ denied plaintiff's application. (Tr. 7.) The Appeals Council then denied plaintiff's request for review. (Tr. 1.) As a result, the ALJ's decision stands as the final decision of the Commissioner. 20 C.F.R. § 416.1481. The case is now before this Court for review.

## **MEDICAL AND OTHER HISTORY**

The following is plaintiff's medical and other history relevant to her appeal.

Plaintiff has been diagnosed with COPD. The exact date of her initial diagnosis is not found in the record. On September 28, 2017, plaintiff visited Amy E. Massa FNP, a nurse practitioner. (Tr. 207.) She denied symptoms of depression and anxiety as well as cough, chest discomfort, wheezing, and shortness of breath. (Tr. 208.) She was noted to be alert, fully oriented, and cooperative. She had a normal mood and affect. She was continued on Celexa for depression. Plaintiff was continued on Librium for anxiety, and it was noted that she had done well on that medication and had been able to avoid alcohol and alcohol cravings. Plaintiff was also continued on Vistaril for her anxiety. (Tr. 209.) She denied most symptoms of anxiety though she reported feeling nervous, anxious, or on edge, and this made it somewhat difficult for her to function. (Tr. 210-11.) Ms. Massa told plaintiff to continue using her COPD medication. (Tr. 208.)

On October 27, 2017, she visited Ms. Massa for a follow-up appointment and denied most symptoms of depression and anxiety. (Tr. 213-14.) Plaintiff stated that her daughter is in a psychiatric facility and may come to live with plaintiff and her family and that this causes stress. Plaintiff had not been drinking alcohol and had no craving for alcohol. (Tr. 214.) Plaintiff had a normal mental status exam. (Tr. 215.) It was again noted that plaintiff's anxiety was controlled on Librium and that she had avoided alcohol and alcohol cravings on Librium. (Tr. 216.) Plaintiff's diagnoses remained major recurrent depression and anxiety disorder. (Tr. 215-16.)

On December 11, 2017, plaintiff again visited Ms. Massa and stated that she had handled her daughter living with her, her husband, and her grandchildren well.  She complained of fatigue but denied experiencing other symptoms of depression and anxiety.  Plaintiff denied alcohol cravings.  (Tr. 219.)  Plaintiff had a normal mental state.  (Tr. 220.)

On February 22, 2018, plaintiff visited Ms. Massa for a follow-up appointment and complained of joint pain, back pain, and arthritis.  (Tr. 229.)  A physical exam revealed that plaintiff had a normal gait with no tender points, and that plaintiff's joints and digits were without deformity. She complained of pain with full range of motion of the bilateral shoulders and lumbar spine.  (Tr. 230.)  Plaintiff was prescribed Meloxicam for joint pain. (Tr. 245.)

On April 3, 2018, plaintiff again visited Ms. Massa and stated that she had been experiencing left heel and foot pain for about a month.  She stated that there was no known trauma to her foot and that she had some difficulty walking.  Plaintiff had not taken any over the counter medications for pain. (Tr. 240.)  On exam, plaintiff had a limping gait on her left foot, and tender points of left heel-plantar surface with no deformity of the joints and digits.   Plaintiff had full range of motion of the left foot and ankle but pain with adduction and internal rotation.  (Tr. 241.)  Imaging showed no dislocations or acute fractures but a small heel spur.  (Tr. 237, 242.)  Plaintiff was diagnosed with ankle pain, given a brace and told to take Tylenol or Meloxicam as needed.  (Tr. 242). Plaintiff had a low score on depression and anxiety symptoms.  (Tr. 238.)  She complained of fatigue but denied other depression symptoms.  She stated that she is sleeping well with Trazodone and that she had consumed very little alcohol over the past month.  (Tr. 240.)  Plaintiff was alert, oriented, cooperative, agitated at times but calmed easily. Overall, her mood was assessed as labile.  (Tr. 241.)  A drug screen was ordered.  (Tr. 242.)

Plaintiff visited Ms. Massa on May 3, 2018.  (Tr. 245.)  The drug screen from her previous visit was positive for a high level of alcohol and plaintiff admitted having a recent relapse of alcoholism.  Plaintiff also tested positive for Morphine, Hydromorphone, and Hydrocodone, none of which were prescribed to her.  Plaintiff had been reported to the Division of Family Services which resulted in her not being able to live in her home.

Instead, she was living with her in-laws.  Plaintiff reported no drug usage or alcohol usage since April 9, 2018. (Tr. 247.)  She was advised against mixing alcohol and medications and taking nonprescribed drugs.  (Tr. 249.)

Plaintiff visited Ms. Massa on June 5, 2018.  (Tr. 251.)  She reported that she had not consumed alcohol in the last month or used nonprescribed drugs and that she had attended addiction therapy.  She complained of fatigue and indecisiveness but denied most other depression symptoms.  (Tr. 252.)  She admitted to not taking her anxiety medication as often as she should.  (Tr. 254.)

Plaintiff visited Ms. Massa for a scheduled follow-up on July 5, 2018.  (Tr. 256.) She stated that she was back home with her husband and grandsons.  She stated that she had been cleaning the house.  Plaintiff denied alcohol use and panic attacks and reported that she continued to attend weekly addiction meetings.  She complained of fatigue and indecisiveness but denied most other depression symptoms.  (Tr. 257.)  She had a normal lung exam despite her COPD diagnosis.  (Tr. 259.)  Ms. Massa advised plaintiff to continue using her COPD medication.  (Tr. 259.)

Plaintiff visited Ms. Massa for another follow-up on August 6, 2018. (Tr. 261.)  She stated that she attends church with her grandsons.  She stated that she had not used alcohol since March 2018. (Tr. 263.)  Plaintiff admitted that alcohol is a problem and that she is working on abstaining from it.  (Tr. 265.)  She complained of feeling nervous, anxious, or on edge and becoming easily annoyed or irritable several days in the past two weeks.  (Tr. 265-66.)

Plaintiff visited Ms. Massa for another follow-up on September 5, 2018.  Plaintiff stated that she had trouble concentrating and had little energy several days a week but denied all other symptoms of depression and anxiety.  (Tr. 267.)  She had completed her addiction program and planned to adopt her grandsons. (Tr. 269.)  A physical exam showed that plaintiff had a normal gait, no tenderness to palpation, and that she had full range of motion with all major joints.  (Tr. 270-71.)  Plaintiff had 5/5 tone/strength of all major muscle groups.  (Tr. 271.)  Plaintiff's depression and anxiety were improved and no longer

made it difficult for her to function.  (Tr. 273.)  Ms. Massa instructed plaintiff to continue using her COPD medication.  (Tr. 272.)

Plaintiff visited Ms. Massa for another follow-up on December 6, 2018.  (Tr. 322.)  She was advised to stop smoking.  (Tr. 328.)  She denied loss of interest in doing things.  (Tr. 327.)

On March 13, 2019, plaintiff visited Ms. Massa and complained of increased shortness of breath recently with more wheezing and coughing as well as chest discomfort.  Plaintiff stated that she was using her Symbicort but that she could not use her nebulizer machine because it was not working properly.  She denied any excessive sputum.  Plaintiff's COPD is managed by steroid with long-acting beta inhaler and nebulized medications.  (Tr. 290.)  A physical exam showed anterior and posterior and lower lobes diminished with expiratory wheezes on auscultation[2] with even and unlabored respirations.  Plaintiff was tapered off Prednisone and started on Trelegy Ellipta.  (Tr. 292.)  Plaintiff stated that she was worried that her daughter would come to her home after she gets out of prison.  Plaintiff was again drinking alcohol even though she knew that she should not drink.  She reported fatigue and indecisiveness but denied other symptoms of anxiety and depression.  (Tr. 290.)  A physical exam showed that plaintiff had a normal gait, no tenderness to palpation, and full range of motion with all major joints.  She had 5/5 tone/strength of all major muscle groups.  (Tr. 292.)

On June 24, 2019, plaintiff again visited Ms. Massa and complained of right knee pain but was not prescribed treatment.  (Tr. 282.)

She visited Ms. Massa on December 12, 2019, and records from that visit show that plaintiff had a carotid bruit.[3]  (Tr. 427-28.)

---

[2] Auscultation is a common technique used by physicians to diagnose pulmonary diseases and assess airflow. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4518345/

[3] A carotid bruit is a vascular sound usually heard with a stethoscope over the carotid artery that may point to an underlying arterial condition that can lead to stroke. https://www.ncbi.nlm.nih.gov/books/NBK536913/#:~:text=A%20carotid%20bruit%20is%20a,that%20can%20lead%20to%20stroke.

Two state agency medical consultants, Barbara Markway, Ph.D., and Manuel Salinas, M.D., determined that there was insufficient evidence to determine the claimant's functional limitations. (Tr. 59, 62.) Salinas and Markway repeatedly requested that plaintiff fill out forms that described her activities of daily living (ADL forms), but the forms were never returned. Plaintiff's claim was denied at the initial stage due to her failure to cooperate and for lack of evidence. (Tr. 59, 61.)

**ALJ Hearing**

On January 9, 2020, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 33-56.) Plaintiff completed high school and has not worked for approximately twenty-five years. (Tr. 37.) She drives no longer than six to eight miles and has not traveled farther than an hour-long drive as a passenger in the last two years. (Tr. 38.) She does not use a cane. She takes multiple medications including Trazodone, Celexa, Symbicort, albuterol sulfate, Vistaril and Pravastatin. She only receives medical care at Cross Trails Medical Center. (Tr. 39.) At a recent doctor visit, she complained of problems with breathing and swallowing. Her doctor recommended that plaintiff undergo an ultrasound of her neck. The ALJ left the record open because plaintiff thought she had a visit between July and November of 2019 which was not documented in the record. (Tr. 40.)

Plaintiff and her husband are guardians of their six and eight year old grandchildren. She was able to lift her youngest grandchild when he was four. She was also able to split logs in the past although she had not done so for at least three years. Bags of groceries are the heaviest items plaintiff had lifted in the past year and a half. (Tr. 41.) She does not use the stairs in her home but does the laundry. She attends her grandchildren's school programs and takes them to the park on occasion. (Tr. 42.) She had been seeing Connie Bean, a counselor at Cross Trails Medical Center, the entirety of 2019 for treatment for alcoholism. Before 2019, she had seen Terry Shirley, a psychiatrist, also for alcoholism. (Tr. 43.)

Plaintiff is currently taking medications for anxiety and depression. (Tr. 45.) The medications help but do not eliminate her anxiety and depression. (Tr. 45-46.) On a good

day, she is able to function and care for her grandchildren. However, even with treatment she has bad days during which she struggles to function and has to force herself to complete her daily tasks. (Tr. 46.) She can stand for only about twenty minutes at a time and for a total of about two hours per day. (Tr. 47.) For the past couple of years she has not been able to walk long distances due to shortness of breath. (Tr. 48.) She has trouble concentrating on a television show but can watch an entire football game on Sunday and focus on her grandchildren's programs at their school. (Tr. 49, 50.) Plaintiff is unable to read without glasses but has not been to an eye doctor in years and has not had glasses since 1978. (Tr. 53-54).

A vocational expert (VE) was asked to consider a hypothetical claimant with plaintiff's age, education and work history who is able to perform medium work but can never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights or hazardous work environments. The hypothetical claimant could frequently climb stairs or ramps and frequently stoop, crouch, kneel, or crawl and would be limited to performing simple, routine tasks and making simple work-related decisions. The claimant could have frequent contact with supervisors and co-workers, occasional contact with the general public, and would need to avoid concentrated exposure to fumes, dust, and other pulmonary irritants as well as avoid concentrated exposure to extreme heat or extreme cold. The VE testified that the hypothetical claimant could perform work as a stocker, packager, or laundry worker. (Tr. 51-52.) Those jobs, however, would not be available to a hypothetical claimant who is off task 15 percent of the workday. (Tr. 52.)

## DECISION OF THE ALJ

On March 19, 2020, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 11-22.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 6, 2018, the application date. At Step Two, the ALJ found that plaintiff had the severe impairments of COPD, anxiety, depression, and alcohol dependence. (Tr. 12.) At Step Three, the ALJ found that plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 416.920(d), 416.925, and 416.926.  (Tr. 14.)

At Step Four, the ALJ determined that plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 416.967(c) except for the following limitations.  Plaintiff can never climb ladders, ropes, or scaffolds.  She can never be exposed to unprotected heights or hazardous work environments.  She can frequently climb ramps or stairs. She can frequently stoop, crouch, kneel, or crawl.  She cannot perform production pace tasks with strict hourly goals.  She can have frequent contact with supervisors and coworkers.  She can have occasional contact with the general public.  She should avoid concentrated exposure to dust, fumes, and other pulmonary irritants and should avoid concentrated exposure to extreme heat and extreme cold.  She will be off task 5% of the time.  (Tr. 16.)

At Step Five, considering the testimony of the VE, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including packager and laundry worker.  Accordingly, the ALJ concluded that plaintiff has not been under a disability as defined in the Social Security Act since the date her application was filed.  (Tr. 22.)

### **GENERAL LEGAL PRINCIPLES**

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole.  *Pate-Fires v. Astrue,* 564 F.3d 935, 942 (8th Cir. 2009).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.*  In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.*  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently.  *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability insurance benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process); *Pate-Fires*, 564 F.3d at 942 (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment.  20 C.F.R. § 416.920(a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the residual functional capacity (RFC) to perform past relevant work (PRW).  *Id.* § 416.920(a)(4)(iv).  The plaintiff bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942.  If the Commissioner determines the plaintiff cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 416.920(a)(4)(v).

## DISCUSSION

Plaintiff argues that the ALJ erred (1) in failing to express the RFC in a function-by-function manner and in failing to point to substantial evidence to support the conclusion that plaintiff retained the RFC necessary to perform the standing and walking requirements of medium work; and (2) in failing to fully and fairly develop the record.

**Residual Functional Capacity**

First, plaintiff argues that the ALJ violated Social Security Ruling 96-8p by failing to express her RFC in a function-by-function manner before expressing it by exertional term.  Consequently the ALJ's articulation of plaintiff's RFC lacked the specificity

required by the Eighth Circuit's decision in *Pfitzner v. Apfel,* 169 F.3d 566, 568-69 (8th Cir. 1999). Specifically, plaintiff argues that the ALJ failed to address her standing and walking ability.

The ALJ must articulate the specifics of a claimant's RFC, rather than describe it in merely general terms. *Id.* at 568. The ALJ should specifically set forth the claimant's limitations and determine how those limitations affect the claimant's residual functional capacity. *Groeper v. Sullivan*, 932 F.2d 1234, 1238-39 (8th Cir. 1991). Failure to assess the claimant's abilities on a function-by-function basis could result in the ALJ overlooking some of an individual's limitations. *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (citing Social Security Ruling 96-8p). For example, in *Pfitzner*, it was not clear what, if any, physical limitations the ALJ had placed on the plaintiff's work activities or how those limitations affected the plaintiff's RFC because the ALJ made only the general conclusion that plaintiff was able to perform medium work. *Pfitzner*, 169 F.3d at 568.

Here, the specifics of plaintiff's RFC are clear from the ALJ's decision. The ALJ found that plaintiff has the RFC to perform medium work as defined in the Social Security regulations. (Tr. 16). That is, plaintiff can perform work that involves lifting no more than fifty pounds but could frequently lift or carry of objects weighing up to twenty-five pounds. 20 C.F.R. § 416.967(c). Plaintiff can perform work that involves a good deal of walking or standing. 20 C.F.R. § 416.967(b). Additionally, the ALJ identified physical limitations suffered by plaintiff regarding her ability to climb ladders, ropes, or scaffolds, be exposed to unprotected heights or hazardous work environments, perform production pace tasks with strict hourly goals, have contact with the general public, and be exposed to pulmonary irritants and extreme heat and cold. (Tr. 16.) While it may have been stylistically preferable for the ALJ to describe the lifting, carrying, standing, and walking requirements of medium work as opposed to citing the relevant regulation, citing the regulation clearly conveys plaintiff's functional abilities. The ALJ properly made explicit findings with respect to plaintiff's functional abilities.

Next, plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because her COPD prevents her from performing the standing and

walking requirements of medium work.  In support of her position, she points to her testimony at the ALJ hearing and her statements in her function report that she can stand for no more than thirty minutes at a time.  (Tr. 47, 172.)  She also points to her testimony at the hearing that she is not able to walk long distances.  (Tr. 47-48.)

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  The claimant has the burden to establish her RFC.  *Mabry v. Colvin,* 815 F.3d 386, 390 (8th Cir. 2016).  The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations.  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record.  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  The RFC need only include the limitations supported by the record.  *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).  There is no requirement that an RFC finding be supported by a specific medical opinion.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers*, 721 F.3d at 526-27) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)).

Here, there is sufficient medical evidence to support the ALJ's finding that plaintiff retained the RFC necessary to perform the standing and walking requirements of medium work.  On February 22, 2018, a physical exam showed that plaintiff had a normal gait with no tender points, and that plaintiff's joints and digits were without deformity.  (Tr. 230.) Additional physical exams, conducted on September 5, 2018, and March 13, 2019, yielded the same results.  (Tr. 271, 292.)  While plaintiff complained of arthritis as well as osteoporosis on multiple occasions, she was never diagnosed with either of those conditions.  (Tr. 47, 240, 247, 253, 269, 290.)  Nor did plaintiff allege arthritis or osteoporosis as a condition that limited her ability to work in her disability report.  (Tr. 156.)  Plaintiff's statement at the ALJ hearing that she is unable to walk from her home to neighboring farms does not support her position.  Medium work requires standing or

walking, intermittently, for a total of six hours in an eight-hour workday. *Hajek v. Shalala,* 30 F.3d 89, 92 (8th Cir. 1994) (citing Social Security Ruling 83-10). It does not require walking continuously for long distances.

In her brief, plaintiff argues that her COPD prevents her from performing the standing requirements of medium work. However, the evidence in the record attributes her inability to stand for longer than thirty minutes to joint pain, which, unlike shortness of breath, is not a symptom of COPD. In her Function Report, plaintiff reported that she can stand for approximately thirty minutes at a time before pain causes her to sit down. (Tr. 172.) At the ALJ hearing, plaintiff did not attribute her alleged inability to stand for longer than thirty minutes to a particular symptom or medical condition. (Tr. 47.) However, given her statements in her function report and her repeated complaints of arthritis and osteoporosis, there is no reason to think that it was shortness of breath, rather than joint pain, that caused her alleged limitation. The ALJ limited plaintiff's severe impairments to COPD, anxiety, depression, and alcohol dependence, a finding that plaintiff did not challenge. (Tr. 12.) Therefore, the ALJ properly based her determination of plaintiff's RFC on medical evidence.

**The ALJ's Duty to Fully and Fairly Develop the Record**

Lastly, plaintiff argues that the ALJ failed to fully and fairly develop the record. She claims that the record contains no medical evidence of her ability to function in a work setting.

It is well settled that an ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012). This duty exists independent of the claimant's burden to press her case, because the social disability hearing is a non-adversarial hearing. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). This duty may require an ALJ to obtain additional medical evidence before rendering a decision. See 20 C.F.R. § 404.1519a(b), § 416.919a(b). Ultimately, however, the claimant bears the burden of proving disability and providing medical evidence regarding the existence and severity of an impairment. *Snead v. Barnhart*, 360 F.3d 834, 836 (8th Cir. 2004). So long as substantial evidence in the record provides a sufficient basis for the ALJ's decision, the

ALJ is permitted to issue a decision without additional medical evidence. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

In this case, there is sufficient evidence to support the ALJ's decision that plaintiff is not disabled. As noted above, on three separate occasions a physical exam showed that plaintiff had a normal gait with no tender points, that plaintiff's joints and digits were without deformity and that she had full strength and tone with all major muscle groups. (Tr. 230, 271, 292.) Furthermore, lung exams on July 5, 2018 and March 13, 2019 revealed that despite her COPD, plaintiff's respirations were even and unlabored. (Tr. 259, 292.) Plaintiff's daily activities also undermined her claim of disability. She reported that she can shop, although for a maximum of thirty minutes. (Tr. 170). She also reported that she is able to do the laundry a little at a time. (Tr. 168). Plaintiff's other activities include watching a football game, attending her grandchildren's school programs, and occasionally taking them to the park and to church. (Tr. 50, 42, 263, 168). Therefore, there is sufficient evidence in the record to support the ALJ's conclusion that plaintiff is not disabled.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/s/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 28, 2022.